BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT NO. 3 OF THE TOWN OF HUNTINGTON, Appellant-Respondent, v. ASSOCIATED TEACHERS OF HUNTINGTON, INC., Respondent-Appellant.—

In our opinion, sections E and F of article VIII and all of article XXI are valid for the reasons stated by Special Term. Moreover, we find that *Matter of Teachers Assn. (Board of Educ.)* (34 A D 2d 351) is further authority supporting the validity of those portions of the agreement and is also supportive of the legality of section A of article XI of the agreement. Concerning section A of article XI, in our opinion plaintiff's agreement to pay the tuition for approved graduate studies that a teacher might undertake is, in effect, merely an undertaking to pay a further relatively small salary increment to teachers who are improving their skills. Plaintiff has the power to undertake to make such payments (*Matter of Teachers Assn. [Board of Educ.]*, 34 A D 2d 351, *supra*), especially since the payments would further the statutory public purpose of increasing the skills of teachers in their professional capacity. Concerning Special Term's decision and judgment sustaining only in part the legality of section C of article XVIII of the agreement, it is our opinion (1) that a Board of Education is better qualified to decide whether a teacher in its employ should be dismissed for incompetency or misconduct than an arbitrator or arbitrators and (2) that, since the dismissal of a teacher for incompetency or misconduct is a matter of vital importance to the public and especially school children who would be affected thereby, the contractual delegation to an arbitrator or arbitrators of the power to determine whether a teacher should be dismissed for incompetency or wrongdoing is void as contravening major public policy (cf. *Matter of Aimcee Wholesale Corp. [Tomar Prods.]*, 21 N Y 2d 621, 626–629; *Norwalk Teachers' Assn. v. Board of Educ. of City of Norwalk*, 138 Conn. 269; *Matter of Michelman*, 5 Misc 2d 570; *Matter of Diamond*, 80 N. Y. S. 2d 465, affd. 274 App. Div. 762; *Matter of Swislocki [Spiewak]*, 273 App. Div. 768). For the foregoing reasons, as well as for the reasons stated by Special Term in its opinion and decision, we are affirming the determination concerning the legality of section C of Article XVIII of the agreement. Martuscello, Acting P. J., Latham and Brennan, JJ., concur; Shapiro, J., concurs with the majority,

except that he dissents with respect to article XXI of the agreement and votes to further modify the judgment so as to declare that provision illegal and of no effect, with following memorandum, in which Christ, J., concurs: I dissent only from so much of the majority determination as sustains the validity of Article XXI of the agreement entered into between the parties. In sustaining the legality of that article the Special Term held that it was "a term and condition of employment concerning which the Board has lawful power to agree and bind itself." Article XXI reads as follows: "Retirement Award. Each teacher who hereafter indicates his intention to retire one year prior to such retirement under the New York State Teachers Retirement System or whose retirement is mandatory under such system shall receive at the start of the last school year of service a salary increase for that year equal to 5/10 of 1% (0.5%) of his current salary multiplied by the number of years of service in this school district, such salary increase not to exceed $1500." If the alleged "retirement award" constitutes a "retirement plan" it would be violative of subdivision a of section 113 of the Retirement and Social Security Law and of section 526 of the Education Law. Subdivision a of section 113 states that no municipality may "create any retirement system for its officers or employees." A "school district" is, for that purpose, included within the term "municipality" (Retirement and Social Security Law, § 2, subd. 19). It may well be argued that any extra compensation paid to a teacher for the last year of his retirement, *and by reason thereof,* is a special retirement benefit, since the pension benefits of a retired teacher are based on his "final average salary" (Education Law, § 501, subd. 11; §§ 508, 510 *et seq.*). If article XXI is held valid a school district could double the salary of prospective retirees during their last two or three years of service, thus destroying the uniformity of the entire actuarial system which is based upon a "normal" increase in average salaries paid. The question whether article XXI is invalid on the ground that it is a special retirement benefit need not be determined, however, for it seems to me to be clearly invalid both as a gift of public funds and as an arbitrarily discriminatory enactment. The New York State Constitution (art. VII, § 8, subd. 1) provides: "The money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking; nor shall the credit of the state be given or loaned to or in aid of any individual, or public or private corporation or association, or private undertaking, but the foregoing provisions shall not apply to any fund or property now held or which may hereafter be held by the state for educational, mental health or mental retardation purposes." Under the provisions of article XXI only those teachers who reach the mandatory retirement age during the ensuing year and those who indicate their "intention to retire" during that period receive the increased emolument. Salary distinctions between teachers are permissible only if the distinctions have a rational basis and are not unreasonable or arbitrary (*Harman* v. *Board of Educ. of City of N. Y.,* 300 N. Y. 21; *Kelly* v. *Board of Educ. of City of N. Y.,* 125 N. Y. S. 2d 42). The provision here under consideration is unlike those in *Matter of Carr* v. *Roesch* (255 N. Y. 614) or *Matter of Wright* v. *Craig* (202 App. Div. 684, affd. 234 N. Y. 548), the rationale of which was that there could be a reward by additional compensation, "which looks to the future and depends upon the continued performance of service after the promise" (*Matter of Wright* v. *Craig, supra,* p. 688). Here, the added compensation is not given in contemplation of future meritorious service. It looks to the discontinuance of the teachers' services rather than to their continuance. Viewed realistically, this provision is, in truth and in fact, a gift of public funds (cf. *Matter of Boyd* v. *Collins,* 11

N Y 2d 228; 1965 Opns. Atty. Gen. 97). Further, the provision in question violates both the Constitution of the United States (14th Amdt., § 1) and the Constitution of the State of New York (art. I, § 11), since it arbitrarily discriminates between teachers holding the same position, with the same years of service and competence, merely because one is about to retire (*Harman* v. *Board of Educ. of City of N. Y.*, 300 N. Y. 21, 30, *supra*). The provision here involved is substantially different from the one construed by this court in *Matter of Teachers Assn. (Board of Educ.)* (34 A D 2d 351). The provision there was one which encouraged teachers to remain in public service and to continue in employment, while article XXI constitutes an inducement to teachers to retire from their employment. The invalidity of the provision becomes apparent when we consider what would happen if the teacher who "indicates his intention to retire" after the expiration of one year changes his mind and does not retire. He has already been paid the increase for the year in question. Does he have to return it because he has not retired or is he to be permitted to keep it because his intention to retire was bona fide at the time he evinced it although thereafter, for one reason or another, he changed his mind? The question points up the glaring invalidity of article XXI, at least as to those whose retirement is not mandatory. We are not dealing here with a long-range plan granting future increases of salaries for merit but with a one-shot provision in an agreement of one year's duration (the original agreement) and in an agreement (the second) which has only a two-year life (July 1, 1969 to June 30, 1971). In summary, whether or not article XXI is invalid as a "retirement benefit", it is clearly invalid by reason of its unreasonable, discriminatory and arbitrary character and because it is a gift of public moneys.